# NORTHWESTERN TRUST COMPANY v. H. N. BRADBURY.[1]

July 29, 1910.

Nos. 16,673—(208).

**State bank — liability of stockholders for its debts.**

Stockholders of a banking corporation organized under the laws of this state, which is not a bank of issue or circulation, are liable under article 10, § 3, of our state constitution, for the debts of the corporation. International Trust Co. v. American Loan & Trust Co., 62 Minn. 501, followed.

**Same — after transfer of stock.**

If a corporation becomes insolvent and proceedings are instituted for the sequestration of its property within a year after entry of a stock transfer, a cause of action accrues in favor of creditors against the transferrer for the debts existing at the time of such transfer, which may be enforced at any time within six years after it so accrues.

Action in the district court for Ramsey county to recover $2,-500 on account of defendant's secondary liability as a former stockholder in the State Bank of St. Paul. The substance of the complaint is stated in the opinion. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. From an order, Bunn, J., overruling defendant's demurrer to the complaint, defendant appealed. Affirmed.

*A. B. Jackson,* for appellant.
*Young & Stone,* for respondent.

STABT, C. J.

Appeal from an order of the district court of the county of Ramsey overruling the defendant's demurrer to the complaint in an action by the plaintiff, as receiver of the State Bank of St. Paul, here-

[1] Reported in 127 N. W. 386.

inafter referred to as the bank, to recover from the defendant upon his alleged secondary liability as a former stockholder of the bank.

The action was commenced July 28, 1909. The here material allegations of the complaint are to the effect following: That the bank during all the times stated was and is a banking corporation duly organized under the laws of this state, with a capital stock of $25,000, divided into two hundred fifty shares, of the par value of $100 each; that on September 30, 1908, in a proceeding duly instituted in the district court of the county of Ramsey, the bank was duly adjudged to be insolvent, and the plaintiff was duly appointed receiver thereof; that in such proceeding, and on April 13, 1909, the court by its order duly levied an assessment, to pay the debts of the bank, of one hundred per cent. on the par value of every share of the stock in the bank, to be paid in thirty days, and directed the plaintiff as receiver to collect the assessment by suit if not paid; that on and prior to March 9, 1908, the defendant was the owner of twenty-five shares of such stock, which he on that day sold to Thomas Brusegaard, and the stock was transferred to him on the stock record book of the bank, and that he still owns such shares; that the plaintiff on July 22, 1909, duly recovered judgment against Brusegaard for the amount of such assessment on the shares so transferred, but he is insolvent, and an execution issued to enforce the judgment has been returned wholly unsatisfied; and, further, that substantially all the indebtedness of the bank for the payment of which the assessment was levied existed prior to March 9, 1908.

The complaint does not allege that the bank was not a bank of issue; but, if material, we will take judicial notice that the bank was not a bank of issue, for it is a matter of common knowledge that there are and have been no banks of issue in this state for more than forty years. Seymour v. Bank of Minnesota, 79 Minn. 211, 222, 81 N. W. 1059.

The primary reason urged by the defendant why the complaint does not state a cause of action is that there was no law, statutory or constitutional, imposing upon stockholders of a bank, other than those issuing bank notes, any liability for corporate debts in force at the time, March 9, 1908, the defendant transferred his stock.

It appears from the legislative history of the subject of stock-holders' liability for corporate debts that the legislature has from time to time re-enacted the provisions of the constitution. See G. S. 1866, c. 33, § 21, and chapter 34, § 9, subsec. 4; also Laws 1895, p. 301, c. 145, § 5, which provided that: "The stockholders in each bank shall be individually liable in an amount equal to the amount of stock owned by them for all the debts of such bank, and for all transactions prior to such transfer, such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders." This provision, as it appears in R. L. 1905, § 2985, so far as here material, is in these words: "Every person becoming a stockholder shall succeed in proportion to his interest to all the rights, and become subject to all the liabilities, of his transferrer. But the liability of the latter shall continue for one year after the entry of such transfer." This section was amended April 10, 1907 (Laws 1907, c. 137; R. L. Supp. 1909, § 2985), whereby the stockholders' liability for corporate debts was specifically imposed; but since the act provided that any bank theretofore organized might come under its provisions by amending its articles of incorporation, and there being no allegation in the complaint as to when the bank in question was incorporated, it may be conceded that the act of 1907 is not here relevant.

Counsel for the defendant claims that, by the Revised Laws of 1905, section 5, c. 145, Laws 1895, was repealed, and that thereafter, and until the enactment of Laws 1907, c. 137, there was, in this state, no statutory liability of stockholders of banking corporations not issuing bank notes. We are not prepared to concede that the Revised Laws repealed such statutory liability.

Section 2985 expressly recognizes the existence of such liability, and provides the length of time the liability of the transferrer of stock shall continue after record entry of transfer. Changes made by a revision of statutes will not be construed as altering the existing law, but as a continuation thereof, unless it is clear that such was the intention, and, further, if the statute as revised is ambiguous, or susceptible of two constructions, reference may be had to prior statutes. State v. Stroschein, 99 Minn. 248, 109 N. W. 235;

Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; State v. Hovorka, 100 Minn. 249, 110 N. W. 870, 8 L.R.A.(N.S.) 1272. This provision of the revision shows either a purpose to continue the then existing statute or to omit a direct repetition of it, because it was not necessary to re-enact the constitution. It cannot be presumed that the revisers of the statutes intended to exempt stockholders of state banks from all liability for corporate debts. On the contrary, it would seem that section 2985 might fairly be construed as continuing the statutory liability of such stockholders. However, for the purpose of this appeal only, we assume that the statutory liability imposed by the act of 1895 was repealed by the revised laws.

This brings us to the question whether the constitution imposes a liability for the debts of the corporation upon stockholders of banks of the character of the one here in question. It is apparent from the provisions of the constitution that the framers thereof, appreciating the necessity and justice of imposing upon the stockholders of corporations a limited liability at least for the debts of the corporation, intended to impose such liability upon the stockholders of all corporations, and not leave the matter to the uncertain discretion of the legislature. Accordingly, by article 9, § 13, a liability was imposed upon stockholders of banks of issue equal to double the amount of stock held by them, and by article 10, § 3, a liability was imposed upon the stockholders of every other corporation for its debts to the amount of their stock. It is obvious that unless stockholders of banks, which do not issue bank notes, are included in the provisions of article 10, then there is no constitutional liability of stockholders of any such bank for its debts, and that the manifest intention of those who framed and adopted the constitution is defeated. Article 10, as originally adopted, and so far as here material, is in these words:

"Section 1. The term 'corporations' as used in this article shall be construed to include all associations and joint-stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges.
* * *

"Sec. 3. Each stockholder in any corporation  *  *  *  shall be liable to the amount of stock held or owned by him."

It is clear that, if the clause in section 1, "except such as embrace banking privileges," is limited to banks issuing bank notes, the liability of the stockholders of all other banking corporations is included in article 10, § 3. Such a construction would give complete effect to the manifest intention of the framers of the constitution by making stockholders of corporations liable for corporate debts to the extent imposed by the constitution, and such seems clearly to be the proper construction of the clause. It is unnecessary to discuss the question in detail for it has been settled by the decision of this court. International Trust Co. v. American Loan & Trust Co., 62 Minn. 501, 65 N. W. 78, 632. It was expressly held in that case, after an exhaustive argument of the question by eminent counsel and careful consideration by the court, that the clause of article 10, § 1, "except such as embrace banking privileges," refers only to banks of issue or circulation whose stockholders are made liable by article 9, § 13, and that the stockholders of banking and other corporations not issuing bank notes, but doing a deposit, discount, and loan business, are liable for corporate debts under article 10, § 3, to the amount of stock held or owned by them.

The reasons for this conclusion were clearly and forcibly stated, by Mr. Justice Mitchell, speaking for the court, as follows: "This exception was, in our opinion, intended to include only those corporations already treated of in article 9, to-wit, 'banks of issue or circulation.' The use of the term 'privileges,' to the exclusion of the term 'powers,' is significant. A privilege, as distinguished from a mere power, is a right peculiar to the person or class of persons on whom it is conferred, and not possessed by others. As applied to a corporation, it is ordinarily used as synonymous with 'franchise,' and means a special privilege conferred by the state, which does not belong to citizens generally of common right, and which cannot be enjoyed or exercised without legislative authority. Corporations usually possess many powers which are not franchises or privileges in that sense. The right to receive money on general or special deposit, to lend money on securities, to discount or purchase bills,

notes, or other evidences of indebtedness, are not franchises or privileges. No legislative authority is necessary to authorize a person or partnership to engage in such kinds of business. The right to do so belongs to all citizens of common right. Now, while banks of issue may have the power to do all these things, the only franchise or privilege which they possess, aside from the mere right to exist and act as a corporation is that of issuing their notes for the purpose of circulation as money. It was this right and this class of corporations that the framers of the constitution evidently had in mind in using the term 'banking privileges.' "

It is asserted in defendant's reply brief that this decision on reargument was abandoned and reversed by the court. This claim rests upon a misconception of the record in the case cited. The action was one against the corporation and its stockholders to enforce their alleged constitutional liability for the debts of the corporation. It was conceded that there was no statutory liability. The corporation was authorized to do a discount and deposit business. The stockholders demurred to the complaint on the ground that it did not state a cause of action as to them. The trial court sustained the demurrer on the sole and express ground that, the corporation not being a bank of issue and circulation, its stockholders were not liable under article 9, nor were they liable under article 10, because the corporation was one having banking privileges within the meaning of the exception in article 10, and therefore there was no constitutional provision making them liable. The plaintiff appealed to this court, where the question decided by the trial court was thoroughly argued by counsel in their printed briefs and on the oral argument. The construction of article 10, especially the meaning of the term "banking privileges," was the primary question discussed, and the greater portion of the briefs related to this question.

It was, however, claimed in the brief of one, and only one, defendant, but not urged on the oral argument, that the complaint failed to show that the stockholders were such at the time the debts for which it was sought to hold them liable were contracted. This court fully considered and decided the primary questions involved

112 M.—6.

in the litigation, and the only one passed upon by the trial court, and held that the stockholders were liable under article 10, § 3, and reversed the order of the trial court sustaining the demurrer. In doing so the technical claim as to the sufficiency of the allegations in the complaint to show that the defendants were stockholders when the debts were contracted was overlooked. On reargument the attention of the court was called to the omission, and the special objection to the complaint was sustained, and the order reversing the order of the trial court, not the decision of this court on the construction of article 10, was set aside, and the lower court's order affirmed. The decision of the primary question was in no manner questioned or modified on the reargument, and it stands precisely as if the court had, after disposing, in its opinion, of the constitutional question, then disposed of the technical objection to the complaint. The decision of the primary question was not dictum, for a decision of the question was essential to a proper disposition of the case to enable the trial court to proceed intelligently with the case upon its remand. It would have been, in view of the history of the case, a travesty on the administration of justice to have sent it down without deciding the constitutional question.

Other alleged reasons are urged in the reply brief why the case should not be followed as decisive of the one at bar. We have considered them, but we cannot concur in the suggestions of counsel. We are of the opinion that the case of International Trust Co. v. American Loan & Trust Co., supra, should and must be followed.

The only other question raised by defendant meriting special consideration is to the effect that, even if he were at any time liable as a stockholder, such liability ceased in one year after the transfer of his stock. This, also, is a closed question under the decisions of this court. The provision of R. L. 1905, § 2985, to the effect that "the liability * * * shall continue for one year after the entry of such transfer," means that the creditor's cause of action must accrue within one year next after the transfer; or, in other words, the contingent liability of the stockholder to respond for the debts of the corporation upon its insolvency must become absolute by the occurrence of such insolvency within the year next after the

recorded transfer of his stock, but if such cause of action does so accrue within the year it may be enforced at any time within the general statute of limitations of six years.   Harper v. Carroll, 62 Minn. 152, 64 N. W. 145; Harper v. Carroll, 66 Minn. 487, 69 N. W. 610, 1069; Hunt v. Doran, 92 Minn. 423, 427, 100 N. W. 222.   There is a statement in the opinion in Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259, which, when considered without reference to the facts in that case, tends to support the contention of the defendant.   No such question was before the court in that case.

In the case at bar the defendant transferred his stock March 9, 1908, and the bank was adjudged insolvent September 30, 1908; hence the cause of action accrued within the year, and it may be enforced by action at any time within six years.

Order affirmed.

O'BRIEN, J., took no part.